CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/9/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| AMANDA C.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 6:22-cv-00014 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Amanda C. ("Amanda") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381-1383f. Amanda alleges that the ALJ did not include a logical explanation to connect her severe impairment of migraine headaches and the limitations in the RFC.

I conclude that substantial evidence does not support the Commissioner's decision. Accordingly, Amanda's motion for summary judgement is **GRANTED in part** (Dkt. 18),[2] the Commissioner's motion for summary judgment is **DENIED** (Dkt. 19) and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] In her brief, Amanda asks that the Court to grant her motion for judgment, Dkt. 18 at 22, but has not filed such a motion on the docket. I therefore construe Amanda's brief as a motion for summary judgment.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Amanda failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). I find that remand is appropriate here because the ALJ failed to explain how the RFC accounts for Amanda's severe impairment of migraine headaches.

## CLAIM HISTORY

Amanda filed for DIB and SSI in March 2020, claiming her disability began on May 1, 2019, due to PTSD, depression, degenerative disc disease, carpal tunnel, anxiety, and stomach problems. R. 97, 117, 138, 168. The state agency denied Amanda's applications at the initial and reconsideration levels of administrative review. R. 97–114, 117–34, 137–64, 167–94. On July 8, 2021, ALJ Suzette Knight held a hearing to consider Amanda's claims for SSI and DIB. 38–68. Counsel represented Amanda at the hearing, which included testimony from vocational expert Kathleen Sampeck. On August 9, 2021, the ALJ entered her decision analyzing Amanda's claims under the familiar five-step process[4] and denying her claims for benefits.[5] R. 10–25.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Amanda was 39 years old on her alleged onset date, making her a younger person under the Act. R. 24.

The ALJ found that Amanda suffered from the severe impairments of obesity, degenerative disc disease, degenerative joint disease/joint dysfunction, fibromyalgia, migraine headaches, other disorders of the gastrointestinal system with hernia, depressive disorder, carpal tunnel syndrome, anxiety disorder, and post-traumatic stress disorder ("PTSD"). R. 13. The ALJ found that Amanda was mildly limited in the broad functional area of understanding, remembering, or applying information and moderately limited in the broad functional areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 17–18.

The ALJ determined that Amanda's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ specifically considered SSR 12-2p[6] (fibromyalgia), SSR 19-2p (obesity), listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), listing 1.18 (abnormality of a major joint(s) in any extremity), listing 5.06 (inflammatory bowel disease), listing 11.02 (epilepsy), SSR 19-4p (headache disorders), listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.15 (trauma- and stressor-related disorders).

The ALJ concluded that Amanda retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17. Amanda can stand and/or walk for a total of four hours in an eight-hour workday. Id. She can occasionally reach overhead with the left upper

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

extremity, balance, stoop, kneel, crouch, or climb ramps or stairs. Id. Amanda can never climb ladders, ropes, or scaffolds. Id. She can tolerate occasional exposure to humidity, wetness, extreme cold, extreme heat, vibration, and concentrated atmospheric conditions. Id. Amanda can never be exposed to workplace hazards, such as unprotected heights and machinery with open moving parts. Id. She can frequently handle and finger bilaterally. Id. Amanda can maintain concentration and persistence to perform unskilled work at a non-production pace in two-hour increments to complete an eight-hour day. Id. She can interact with the public occasionally and can tolerate occasional changes in a routine work setting. Id. In addition to normal breaks, Amanda will be off task 5% of the time in an eight-hour day for additional bathroom breaks. R. 18. The ALJ determined that Amanda did not have any past relevant work but could perform jobs that exist in significant numbers in the national economy, such as router, office helper, and non-postal mail sorter. R. 24–25. Thus, the ALJ determined that Amanda was not disabled. R. 25. Amanda appealed the ALJ's decision, and the Appeals Council denied her request for review on February 1, 2022. R. 1–4.

## ANALYSIS

Amanda alleges that the ALJ did not include a logical explanation to connect Amanda's severe impairment of migraine headaches and the limitations in the RFC.

### A. Medical History Overview

1. Relevant Medical Treatment

Amanda has a history of migraine headaches, which predate the alleged onset date of her disability. R. 1063. In May 2019, Amanda reported to her neurologist that she experienced two to three migraines per month, associated with photophobia, phonophobia, and nausea. R. 507–08. Amanda would also experience kaleidoscope vision and scotoma. R. 507. Amanda's neurologist

prescribed her sumatriptan to take at the onset of migraine pains. R. 507–08. By October 2019, Amanda reported to her neurologist that she experienced two to three migraines per week. R. 552. Amanda's neurologist prescribed propranolol to be taken nightly to prevent migraines. Id. Amanda reported that her migraines had decreased in March 2020, reporting to her neurologist that she experienced two to four migraines per month. R. 603. Due to recent weight gain, Amanda stopped taking her propranolol. Id. She also stopped taking triptans due to a heart arrhythmia. Id. Amanda's neurologist prescribed magnesium and a combination of Tylenol and Zofran. Id. In June 2020, Amanda noted she averaged 10 migraines per month in addition to frequent tension headaches. R. 1258. Her neurologist started her on topiramate nightly.[7] Id.

2. Medical Opinions

Amanda was previously denied disability benefits in April 2019, where she was found to have the severe impairments of degenerative disc disease with chronic lumbar spine pain, GERD with a history of gastric surgery and abdominal pain, and osteoarthritis and was found to be able to complete modified light work. R. 72–86. The ALJ gave weight to the decision but noted that "the updated evidence submitted in conjunction with the current application is more consistent with the additional physical and mental impairments" ascribed by the ALJ. R. 13, 14, 18, 24.

In June 2020 and March 2021, respectively, state agency psychiatrists Stephen Saxby, Ph.D., and Richard Milan, Jr., Ph.D., reviewed the record and found that Amanda had moderate limitations in interacting with others, concentration persistence, or pace, and adapting or

---

[7] Amanda has a history of several other health issues and diagnoses, including shoulder pain, depression and anxiety, PTSD, major depressive disorder, abdominal pain, diverticulitis, tachycardia, pain in her feet, leg pain, back pain, fibromyalgia, and lumbosacral degenerative disc disease. However, I do not discuss these health issues or diagnoses because they are not relevant to Amanda's argument that the ALJ did not properly consider her migraine headaches.

6

managing oneself and mild limitations in understanding, remembering, or applying information. R. 106, 126, 151, 181.

In June 2020 and March 2021, respectively, state agency physicians Jack Hutcheson, M.D., and Eugene Noland, M.D., reviewed the record and found that Amanda could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds. R. 107, 128, 154, 184. Drs. Hutcheson and Noland found that Amanda could stand or walk for four out of eight hours and could sit for six out of eight hours. R. 108, 128, 154, 184. Dr. Hutcheson also concluded that Amanda should avoid concentrated exposure to extreme cold or heat, humidity, noise, vibration, fumes or odors, and hazards. R. 109, 129. Dr. Noland concluded that Amanda should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards but found that she had no further environmental limitations. R. 156, 186.

The ALJ found the above conclusions from the state agency psychiatrists and physicians to be somewhat persuasive. R. 23. The ALJ reasoned that the conclusions "remain supported by the available clinical findings and consistent with the grossly conservative treatment history." Id. However, the ALJ found that "[t]he updated hearing level evidence and testimony is consistent with the additional adopted non-exertional restrictions in the residual functional capacity." Id.

In May 2021, one of Amanda's mental health providers, Joetricia Humbles, LMHP-E resident in counseling, completed a mental impairment medical source statement. R. 1950–55. Ms. Humbles concluded that Amanda would miss work more than three times per month due to her impairments or treatment. R. 1952. Ms. Humbles further concluded that Amanda had moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence, or pace, and repeated episodes of deterioration or decompensation in work or work-like settings. R. 1954. The ALJ found this

opinion not persuasive. R. 23. The ALJ reasoned that Ms. Humbles's opinion is not supported by "the clinical or examination findings of no acute mental complications" and not consistent with "the conservative and outpatient treatment history or [Amanda's] stated ongoing capabilities[.]" Id.

### B. Function-by-Function Analysis

Amanda argues that the ALJ "provided an RFC that failed to include a logical explanation for the limitations in the RFC and failed to account for the full range of [Amanda's] limitations as established by the record." Pl.'s Br. at 12, Dkt. 18. Specifically, Amanda argues that "the ALJ found that [Amanda's] migraine headaches were a severe impairment and yet the RFC contains no logical limitation in response." Id. Amanda points to the ALJ's limited rationale related to her migraines, which Amanda labels as vague. Id. at 13. The Commissioner counters that the ALJ performed a proper function by function analysis that "fully account[s] for all of [Amanda's] credibly established limtiations." Def.'s Br. at 13, Dkt. 20.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In <u>Mascio v. Colvin</u>, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" <u>Mascio</u>, 780 F.3d at 636 (citing <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)). "The <u>Mascio</u> Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." <u>Newcomb v. Colvin</u>, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision does not contain sufficient information to allow meaningful review. Like in <u>Mascio</u>, the court is "left to guess about how the ALJ arrived at his conclusion" because the ALJ did not explain how the limitations in the RFC correlate with Amanda's severe impairments. The ALJ found that Amanda's migraine headaches are a severe impairment. R. 13. The ALJ noted that "[n]eurology treatment records document a prescribed medical regimen to trea[t] migraines and chronic tension headaches." R. 21. The ALJ stated that "[f]ollow-up assessment continued to document no impairments of cognitive or motor functioning, as strength remained 5/5 in all upper and lower extremities." <u>Id.</u> Further, the ALJ noted that "[t]here is no evidence of intracranial irregularities providing an etiology for [Amanda's] headache complaints." R. 22. In a broad stroke, the ALJ concluded that Amanda's conditions "remained grossly managed on a conservative, routine, and outpatient basis." R. 22.

However, the ALJ never connected these findings with any of the limitations in the RFC. While the ALJ limited Amanda to occasional exposure to humidity, wetness, extreme cold, extreme heat, vibration, and concentrated atmospheric conditions and to no exposure to workplace hazards, R. 17, the ALJ never explained if these limitations were to address Amanda's severe limitation of migraine headaches. The Commissioner argues that the ALJ considered the opinion of Dr. Hutcheson, who gave Amanda environmental limitations due to her "'migraines not requiring frequent or emergent intervention in spite of non-compliance with [medications.]'" Def.'s Br. at 18, Dkt. 20 (quoting R. 128). The Commissioner further argues that "[t]he ALJ's review of the evidence regarding [Amanda's] migraines and evaluation of the prior administrative medical findings allows a subsequent review to trace [the ALJ's] reasoning[.]" Id. While the Commissioner correctly notes that the ALJ found Dr. Hutcheson's opinion somewhat persuasive, the ALJ also found Dr. Milan's opinion somewhat persuasive. R. 23. Dr. Milan found that Amanda could have unlimited exposure to extreme heat, humidity, noise, and fumes, odors, dusts, gases, or poor ventilation. R. 156. The Commissioner's argument lacks merit because the ALJ gave the same level of persuasiveness for Dr. Hutcheson's and Dr. Milan's opinions when the two physicians reached different conclusions on Amanda's environmental limitations. Further, the ALJ did not cite to the opinions of Drs. Hutcheson and Milan to support her RFC.

The ALJ did not connect the limitations she gave in Amanda's RFC to Amanda's severe impairment of migraine headaches. While the ALJ discussed Amanda's migraine headaches and some of the treatment notes in the record, the ALJ failed to create "an accurate and logical bridge from the evidence to h[er] conclusion." I am left to guess at how the ALJ accounted for Amanda's migraine headaches in the RFC. I recognize that it is not my function to conduct a

10

blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, here, the ALJ failed to create a logical bridge from Amanda's severe impairments to her RFC. Accordingly, I find that the ALJ's conclusion is not supported by substantial evidence.[8]

## CONCLUSION

For these reasons, an order will be entered **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

Entered: August 9, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[8] Because I find that remand is warranted based on the ALJ's failure to build a logical bridge from Amanda's severe impairment of migraine headaches to the RFC, Amanda's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).